No. 2-18-0622
Order filed July 14, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CM-692 |
| MYKHAYLO Y. SOROCHAN, | ) ) | Honorable John F. McAdams, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court.
Justices Zenoff and Brennan in the judgment.

**ORDER**

¶ 1   *Held*:   There was sufficient evidence to support defendant's conviction for resisting police officers' attempts to arrest him.  Defendant argued that his initial detention by the police was not authorized under the community-caretaking doctrine (see *People v. Queen*, 369 Ill. App. 3d 211 (2006)), but it was immaterial whether any impropriety in the detention tainted the legality of the arrest, as a defendant has no right to resist even an unlawful arrest (720 ILCS 5/7-7 (West 2016))."

¶ 2   After a bench trial, defendant, Mykhaylo Y. Sorochan, was convicted of two counts of resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2016)).  The trial court merged the convictions and sentenced defendant to 12 months' conditional discharge.  On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The charges against defendant centered on his confrontation with officers Mike McCullough and Christopher Johnson at a Walmart in Montgomery on July 31, 2016. On August 12, 2017, the State filed a criminal complaint alleging that defendant knowingly resisted or obstructed the performance by Johnson of an authorized act within his official capacity, the arrest of defendant. The complaint alleged that (1) defendant tried to push Johnson to the side after Johnson advised him that he would be detained and (2) after Johnson attempted to place defendant into custody, he tensed up, attempted to pull away, and, after being taken to the ground, refused to put his hands behind his back. The State also charged defendant with disorderly conduct (720 ILCS 5/26-1(a) (West 2016)) in that he appeared in a public place while under the influence of alcohol to the extent that he might endanger himself  On November 8, 2017, the State added a charge. The common-law record does not contain the specific charge, but an order states that it was added after the court heard argument and that it charged "resisting a peace officer." (There is no transcript of the hearing.)

¶ 5     We summarize the trial evidence. Michael Wallace testified that, on July 31, 2016, he was the automotive-service manager at the Walmart. Shortly before 4:30 p.m., as he stood behind the counter at the rear of the store, he noticed defendant walk by, stumbling, looking disoriented, and smelling of alcohol. Wallace led him to the men's room but did not enter. He let management know about defendant. Defendant did not disturb anyone and nobody complained about him.

¶ 6     Spencer Cleveland testified that, on July 31, 2016, he was an asset protection associate at the store. At about 4:30 p.m., he entered the men's bathroom and saw a man, later identified as defendant, in a closed stall. A janitor unlocked the stall. Defendant was slumped over the toilet

with his hands by his shoes. Cleveland asked him if he was okay. Defendant was breathing but did not respond. Cleveland got his partner Ken Brown to watch defendant and called 911.

¶ 7    Cleveland testified that about 10 minutes later, McCullough arrived. Cleveland directed him to the bathroom. Shortly afterward, Johnson arrived. McCullough and defendant exited the bathroom. The officers instructed defendant to sit on the bench so that paramedics could examine him. Defendant refused medical attention and did not sit on the bench. He said that he wanted to leave the store. The officers told him three or four times to sit down. Johnson put his hand on defendant's shoulder and tried to escort him to the bench. Defendant started shoving Johnson in an effort to break free.

¶ 8    Cleveland testified that the officers took defendant to the ground and told him several times that he was under arrest. They tried to put his arms behind his back to handcuff him. Defendant, who was lying on his stomach, tucked one arm underneath his body. After several minutes, the officers placed his hands behind his back.

¶ 9    Matthew Kiser testified that he was shopping when he saw the officers in the layaway section by bathroom with defendant. They tried to make him sit on the bench, but he refused and repeatedly said that he wanted a drink of water. After the officers took defendant to the ground, he put one hand under his body and the other by his head. Kiser heard one officer tell defendant to give him his hands, but defendant refused. The officer punched him in the back. In a minute or two, the officers handcuffed defendant.

¶ 10    Brown testified that, after Cleveland spoke to him, he entered the men's room, knocked on the locked stall, and got no response. Brown waited outside for about two hours. About every 30 minutes, he checked on defendant, knocking on the door and asking whether he was okay, but he

got no response. A janitor unlocked the stall door. Defendant was slumped over. Later, as the police entered the stall, defendant became responsive, and Brown left the men's room.

¶ 11    Brown testified that he then heard the officers tell defendant to sit on the bench and that. paramedics were coming. Defendant refused to sit on the bench, saying that he did not want medical attention and had no money for it. He said that he wanted to leave. As the officers tried to get defendant to sit down, he became increasingly aggressive, so they took him to the ground. The officers then tried to handcuff defendant, but he refused to give them his hands. Eventually, they handcuffed him. Brown never saw defendant bother anyone, and no customers complained to him about defendant.

¶ 12    The parties stipulated to the foundation for a surveillance video of the confrontation between defendant and the officers.

¶ 13    McCullough testified on direct examination that, at about 6:20 p.m. on July 31, 2016, he arrived at the Walmart. He was in full uniform, including his badge. When he entered the men's room, defendant was drying his hands. McCullough asked defendant if he was okay. Defendant did not respond. McCullough asked again. Defendant asked him what the problem was. McCullough explained, and they exited. Johnson, who was also in full uniform, had arrived. McCullough told defendant that paramedics would arrive to examine him, as he had been found unconscious in the men's room. Defendant became upset. He denied having been unconscious and asked why the police and paramedics had to be there. Johnson attempted to explain, but defendant became more agitated and said that if he was not under arrest, he was leaving. At that time, defendant was not free to leave, because paramedics had to check him out for his own safety and that of the public.

¶ 14 McCullough testified that, after defendant started yelling, he could detect a strong odor of alcohol on defendant's breath. After Johnson explained the situation, defendant said that he was not staying, because he did not want to pay a large medical bill to be transported in an ambulance. The officers attempted to explain that defendant would not have to pay if he got checked out by the paramedics and signed a refusal to go to the hospital. Defendant did not want to listen.

¶ 15 McCullough testified that, after defendant said that he was leaving, he asked to get a drink of water from the fountain behind Johnson. He moved toward the fountain, but the officers got in his way. Defendant tried to walk around the officers, but Johnson put up his hand to stop him. Defendant put up his arm to push Johnson away. Johnson then told defendant that he was under arrest for disorderly conduct based on public intoxication. Johnson told defendant to put his hands behind his back. He refused. Johnson grabbed defendant's left arm and tried to put it behind his back. Defendant resisted. McCullough grabbed defendant's right arm and attempted to put it behind his back. Johnson repeatedly told defendant to put his hands behind his back. Defendant resisted both officers and started to run backward. All three men collided with the back wall. Eventually, the officers forced defendant to the ground.

¶ 16 McCullough testified that, after hitting the ground and landing on his stomach, defendant rolled to the right and kept his right arm underneath his body. Johnson ordered him to place his right hand behind his back, but he refused. McCullough eventually got defendant prone, but defendant kept resisting. Johnson struck defendant in the ribs, and the officers succeeded in handcuffing him. Johnson then transported him the police station,

¶ 17 McCullough testified on cross-examination that, inside the men's room, defendant was not stumbling, bothering anyone, or committing a criminal offense. He did not vomit, and McCullough saw no blood. After defendant said that he did not want to see the paramedics,

McCullough told him that he was not under arrest. Defendant then responded that, if he was not under arrest, he was leaving. Johnson then told defendant that he would have to sign a medical release or he could not leave. The officers refused to let defendant get a drink of water, as they feared that he could then escape from the paramedics. However, defendant was not then under arrest. Eventually, he was arrested for "the public intoxication portion of disorderly conduct."

¶ 18    McCullough testified on redirect that both officers told defendant several times that he was not free to leave until the paramedics checked him out.

¶ 19    The surveillance video was admitted into evidence.

¶ 20    Johnson testified on direct examination that, after he arrived at the Walmart, he saw McCullough and defendant exit the men's room. Johnson asked defendant to sit on the bench, but he refused. At this point, Johnson noticed a strong odor of alcohol on defendant's breath. Defendant tried to walk around Johnson, but Johnson told him that he may not leave. The reason was that unless defendant was examined medically, he might pose a danger to himself. Given his long stay in the men's room and his signs of intoxication, the officers "couldn't let him leave based off [*sic*] the disorderly conduct violation for public intoxication." Johnson believed that defendant could not take care of himself.

¶ 21    Johnson testified that he kept asking defendant to sit on the bench so that he would not fall over. Defendant refused and tried to walk around Johnson, who repeatedly tried to block his path. At one point, defendant took a "bladed stance," looked right at Johnson, and repeatedly clenched his fists. Again, he tried to walk around Johnson. He said that he wanted a drink of water, but Johnson, concerned with defendant's medical condition, did not let him, and he again directed him to sit on the bench. Defendant became agitated and yelled that he did not want to pay any medical

bills and that Johnson could not detain him. Johnson told him that, if he signed a waiver, he would not need to pay anything. Defendant did not believe him; he got angrier and started to walk around.

¶ 22    Johnson testified that he then grabbed defendant's left arm, took his forearm with his other hand, and started to escort him to the bench. Defendant tried to stop, and defendant took his free hand and reached back toward Johnson. Johnson tried to put defendant's hand behind his back. Defendant resisted and pulled his hands toward his body. Johnson told him to put his hands behind his back and stop resisting. At this point, defendant "would have been" under arrest. Johnson had not previously told him that he was under arrest. Defendant refused Johnson's repeated instructions to put his hands behind his back, and both officers tried to push him toward the back wall. Johnson gave defendant a knee strike to his upper left leg to ensure compliance, but he was unsuccessful. He then took defendant to the ground, with McCullough's assistance. He told defendant to put his hands behind his back and stop resisting.

¶ 23    Johnson testified that defendant continued to resist. Eventually, Johnson gained control of his left arm and kept pushing on his rib to get his right arm out from under him. Eventually, defendant put his right hand behind his back and was handcuffed. The paramedics were entering and checked defendant. Johnson then took him to the police station.

¶ 24    The surveillance video was played. The parties stipulated that it showed defendant entering the bathroom at 4:26:11p.m. and not exiting until after 6:20:17 p.m. At 6:22:13 p.m., Johnson asked defendant to have a seat and told him that paramedics would arrive to examine him. At 6:22:36, Johnson had his hand on defendant and was telling him that he was not free to leave. He did not then tell defendant that he was under arrest. He told defendant that he would not need to pay if he signed a waiver.

¶ 25    The State rested. Defendant put on no evidence.

¶ 26    The court acquitted defendant of disorderly conduct but found him guilty of obstructing or resisting a peace officer. The court explained first that the evidence proved that defendant knew that McCullough and Johnson were peace officers, as they had been in full uniform and had identified themselves to him.

¶ 27    The next issue was whether the officers were performing an authorized act within their official capacity. "[T]he question is [did] they have the right to detain [defendant] at the time that they arrived on the scene." The court held that the seizure was proper as community caretaking. The court cited *People v. Queen*, 369 Ill. App. 3d 211 (2006), in which the defendant had fallen out of a tree and a peace officer nearby suspected that he was intoxicated. The appellate court held that the officer had been justified in approaching the defendant, identifying himself, and believing that the defendant could not proceed safely alone in view of his erratic behavior and intoxication.

¶ 28    Here, the court noted, the officers had been informed that defendant had spent two hours in the restroom and employees of Walmart had to force the stall door open to check on him. After he exited, he smelled strongly of alcohol, was shouting, and was acting belligerently. Thus, the officers were authorized to detain defendant until the paramedics arrive to determine whether he could leave without endangering himself or others. Thus, once defendant failed to acquiesce in the lawful detention, he was obstructing a peace officer. And, once he was obstructing a peace officer, McCullough and Johnson validly arrested him. By not allowing the officers to handcuff him even after they told him that he was under arrest, defendant was guilty of resisting arrest. Because the two charges were based on the same actions, the convictions merged.

¶ 29    The trial court sentenced defendant to 12 months' conditional discharge. He timely appealed.

¶ 30                                II. ANALYSIS

¶ 31    On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of obstructing or resisting a peace officer.  He argues that the State failed to prove that he resisted the performance of an authorized act that was within the officer's official capacity.  Specifically, he maintains, the community caretaking doctrine did not permit the officers to detain him without any objective reason to believe that he endangered either his own safety or that of the public. Defendant contends that this case is dissimilar to Queen and more similar to *People v. Slaymaker*, 2015 IL App (2d) 130528.  Defendant does not specifically contend that his subsequent arrest was not an authorized act that was within the officers' official capacity.

¶ 32    The State responds first that the trial court properly found that the community caretaking doctrine applied.  The State responds second that it proved beyond a reasonable doubt that defendant resisted the officer's performance of a separate authorized act, the arrest.  The State notes that the charges against defendant were based on the arrest, not the initial detention, and that the law did not allow defendant to resist the arrest even were it unlawful.

¶ 33    We hold that defendant has forfeited any contention that his arrest was not an authorized act and that, in any event, the evidence was overwhelming in this respect.  Therefore, we affirm without deciding whether the State also proved that the initial detention was an authorized act.

¶ 34    In assessing the sufficiency of the evidence, we ask whether, after viewing all of the evidence in the light most favorable to the State, any rational fact finder could have found the elements of the offense proved beyond a reasonable doubt.  *People v. Ward*, 154 Ill. 2d 272, 326 (1992).  The fact finder is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence.  *People v. Hill*, 272 Ill. App. 3d 597, 603-04 (1995).  It is not our function to retry the defendant.  *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004).

¶ 35    A person commits obstructing or resisting a peace officer when he knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his or her official capacity.  720 ILCS 5/31-1(a) (West 2016).  Defendant does not contest the sufficiency of the proof that he knowingly resisted the officers' attempts to detain him for the paramedics and their later attempt to arrest him.  As important, defendant does not argue that the court erred in finding him guilty of resisting the arrest.

¶ 36    Arguments for reversal that are not raised on appeal are forfeited.  Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).  Defendant has forfeited any contention that the State did not prove that the arrest was an "authorized act."  As he does not contend that the State failed to prove the remaining elements of the charge, we may affirm solely on the basis of forfeiture.

¶ 37    Defendant does raise a challenge to the validity of the initial detention.  But it makes no difference whether the initial detention was proper. Even if it were and thereby tainted the arrest, the legality of the arrest does not matter here.  Defendant's reliance on *Slaymaker* is misplaced. There, we reversed the defendant's conviction of resisting a peace officer during a *Terry* stop that followed valid community caretaking.  *Slaymaker*, 2015 IL App (2d) 130528, ¶ 13.  We explained that, because the *Terry* stop was invalid (*id.* ¶¶ 17-19), it was not an authorized act (*id.* ¶¶ 12-13). We noted, however, that the defendant would have had no legal right to resist the *arrest*, however unlawful.  *Id.* ¶ 13; see 720 ILCS 5/7-7 (West 2010) (a person may not use force to resist an arrest that he knows is being made by a peace officer, even if the arrest is illegal). In so commenting, we followed settled doctrine that even an unlawful arrest is an "authorized act" under the resisting/obstructing statute.  See *People v. Villareal*, 152 Ill. 2d 368, 374-75 (1992).

¶ 38    Although defendant has forfeited any argument that the proof of resisting the arrest was insufficient, we note that the State proved that he did so by repeatedly physically attempting to prevent the officers from handcuffing him.  Even disregarding forfeiture, the judgment must stand.

¶ 39                              III. CONCLUSION

¶ 40    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 41    Affirmed.